UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM FRANK SIKORSKI, JR.,

                Petitioner,                     Case Number 19-13184
                                                  Honorable David M. Lawson

v.

NOAH NAGY,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

After the brutal sexual assault of his ex-girlfriend, petitioner William Frank Sikorski, Jr. was convicted by a Michigan jury of two counts of first-degree criminal sexual conduct (one count on an aiding-and-abetting theory) and one count of domestic violence, third offense. After his convictions and 40-to-60-year prison sentence were upheld by the Michigan appellate courts, he filed the present petition for a writ of habeas corpus without the assistance of a lawyer. Sikorski argues that there was not enough evidence to support the sexual misconduct conviction based on aiding and abetting, convicting him of both sexual misconduct counts violated the Double Jeopardy Clause, the trial court's sentencing procedures were constitutionally flawed, and his trial and appellate lawyers were constitutionally ineffective. The state courts rejected all of those arguments, and their decisions faithfully applied controlling federal law. Sikorski's petition therefore will be denied.

I.

Sikorski's trial took place in the Roscommon County, Michigan circuit court in November 2013. Cathy Barlett, the victim of these crimes, testified that she had been in a romantic

relationship with Sikorski and lived with him for about two years.  She ended that relationship with Sikorski in October of 2012 after he attacked and hurt her.

On October 25, 2012, Sikorski and Barlett drank together at Sikorski's house with another man, Justin Swinson.  Sikorski and Swinson drank heavily and were inebriated.  Barlett went to the bedroom around 10:00 p.m. because she was tired.  Sikorski waved for Swinson to follow him into the bedroom behind Barlett.

After the three smoked marijuana, Sikorski put in a pornographic movie that involved two men and one woman.  After playing the video, Sikorski wanted Barlett to have sex with him and Swinson.  Swinson told Barlett that he was not interested, but he was afraid to tell Sikorski because he had seen what happened when someone tells Sikorski "no."  Barlett also refused, but Sikorski hit her in the face and choked her with his hands.

Sikorski then ripped Barlett's clothes off and said, "it's game time."  Barlett was scared and managed to put her clothes back on.  She told Sikorski that she did not want to have sex with the men, but he ordered her to take off her clothes again.  Barlett complied because of her fear of Sikorski.

Sikorski then hit and choked Barlett while he had sex with her.  She also had non-consensual sex with Swinson; Sikorski forced her to have sex with both men.  Barlett said that she asked both men to stop, but neither did.  Sikorski also threatened to kill Barlett.

When Sikorski woke up the next morning, he hit Barlett and broke her glasses.  She again said that she was afraid that Sikorski was going to kill her.  She managed to walk to a neighbor's house and called 9-1-1.  Barlett told the police that Sikorski was beating and hurting her.  The police took pictures of Barlett that day, October 26, 2012.  The pictures showed bruising around Barlett's left eye.  But she did not report the sexual assaults to the police until November 1, 2012.

Swinson also testified at trial.  He had been charged with first-degree criminal sexual conduct and obstruction of justice as a result of this incident.  He agreed to testify in this case in exchange for the dismissal of the obstruction of justice charge.  He said that he saw Sikorski hit and choke Barlett on the evening before the sexual assault.  He testified that Sikorski would become violent after drinking.  He thought that Barlett had made it clear to the men that she did not want to have sex with them, but Sikorski said he would kill her if she did not have sex with them.  Swinson testified that he saw Sikorski insert his penis into Barlett's vagina.  Sikorski then forced Swinson to have sex with Barlett, and Swinson put his penis into Barlett's mouth.  Swinson heard Sikorski threaten to kill Barlett during the assault.  Sikorski also threatened to kill Swinson.

Swinson admitted that on September 14, 2013, he made two written statements asserting that no sexual acts occurred on the night of the incident.  He said that the statements were false, though, and he made them because he felt intimidated.

Officer Michael Zrebski provided testimony about Sikorski's previous acts of prior domestic violence that resulted in convictions.  In November 2005, after drinking, Sikorski shoved his stepmother through a table.  He pleaded guilty to that domestic violence offense.  In January of 2007, Sikorski's wife told him that their relationship was over.  In response, Sikorski physically attacked her; he also pleaded guilty to that offense.  In January of 2009, Sikorski's wife refused to kiss him because he was intoxicated.  Sikorski grabbed her and punched her in the face.  Sikorski pleaded no contest to the domestic violence charge that resulted from that incident.

The jury convicted Sikorski of both counts of first-degree criminal sexual conduct and domestic violence, third offense.  The trial court sentenced Sikorski as a fourth-time habitual felony offender to 40 to 60 years in prison.

Sikorski filed a direct appeal, arguing that the evidence was insufficient to support any of the convictions, the domestic violence offense had to be dismissed because it was the specified aggravating factor in the sexual misconduct crimes, the trial court should not have allowed into evidence the prior domestic violence convictions, counsel was ineffective, and the sentences were invalid because they were based on inaccurate information.  The Michigan Court of Appeals affirmed in part, but it vacated one of the criminal sexual conduct convictions on double jeopardy grounds.  *People v. Sikorski*, No. 320867, 2015 WL 3540563 (Mich. Ct. App. June 4, 2015). Sikorski raised the same claims in an application for leave to appeal in the Michigan Supreme Court; the prosecutor cross-appealed the double jeopardy ruling.  In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the court of appeals to reconsider the double jeopardy claim in light of the jury instructions on the two criminal sexual conduct charges. *People v. Sikorski*, 499 Mich. 899, 877 N.W.2d 155 (Mich. 2016) (Table).

On remand, the Michigan Court of Appeals concluded that Sikorski's two convictions did not stem from his single penetration of the complainant's vagina, as the court had originally believed.  Instead, it found that the jury had been instructed that the second charge related to Sikorski aiding and abetting Swinson's penetration of the complainant's mouth.  *People v. Sikorski*, No. 320867, 2016 WL 6496092 (Mich. Ct. App. Nov. 1, 2016).  The court also remanded the case to the trial court for a hearing to determine whether resentencing was required, since the then-mandatory sentencing guidelines had since been ruled unconstitutional.  *Id*. at *9.

On remand, the trial court determined that resentencing was not required because "it would not have imposed a materially different sentence in this case but for the unconstitutional constraint upon its sentencing discretion."  (ECF No. 7-18, PageID.1026-27.)  Sikorski appealed that ruling to the Michigan Court of Appeals; the court affirmed.  *People v Sikorski*, No. 337572, 2018 WL

3039633 (Mich. Ct. App. June 19, 2018).  Sikorski applied for leave to appeal to the Michigan Supreme Court, arguing that the sentencing court relied on facts that were not established beyond a reasonable doubt and that the determination that resentencing was not required violated the *Ex Post Facto* Clause of the Constitution.  His application for leave to appeal was denied.  *People v. Sikorski*, 503 Mich. 932, 920 N.W.2d 583 (Mich. 2018) (Table).

In his habeas corpus petition, Sikorski argues that (1) insufficient evidence was presented at trial to sustain one of his criminal sexual conduct convictions, (2) his conviction for two counts of first-degree criminal sexual conduct arising out of one incident violates the Double Jeopardy Clause, (3) defense counsel was ineffective by failing to call witnesses for Sikorski's defense, (4) the trial court relied on facts not proven beyond a reasonable doubt in imposing sentence, (5) the trial court violated the *Ex Post Facto* Clause when it determined that resentencing was not required, and (6) Sikorski's appellate counsel was ineffective by failing to raise the *ex post facto* claim on direct appeal.

The warden filed a response asserting that none of these claims has merit.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily

prescribed deference," *Michael v. Butts*, --- F.4th ---, No. 21-5862, 2023 WL 1432076, at \*5 (6th Cir. Feb. 1, 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

### A.

Sikorski's sufficiency of evidence challenge focuses on the sexual misconduct count that involved Swinson's sexual penetration of the victim's mouth. He reasons that because both Swinson and the victim asserted at trial that neither voluntarily engaged in the sex act, Sikorski

could not have aided or abetted the crime.  Swinson, the principal actor, denied guilt, so there was
nothing for Sikorski to aid or abet, he says.

> The Michigan Court of Appeals efficiently dispensed with this argument:

> The elements of sexual penetration through the use of force or coercion were
> established through the testimony of the complainant and [Swinson].  Both asserted
> that defendant vaginally penetrated the complainant and that [Swinson]
> simultaneously penetrated her orally.  The complainant and [Swinson] testified that
> they did not wish to participate in the sexual acts, but were forced or threatened by
> defendant to engage.  Both witnesses testified that defendant repeatedly struck and
> choked the complainant in the effectuation of the sexual acts.

> Defendant asserts that because [Swinson] contends he was forced to engage in the
> sexual act with the complainant that the prosecutor cannot establish his
> participation as an aider and abettor to meet the remaining [statutory]
> requirement . . . .  The argument lacks merit because, even believing [Swinson]'s
> assertion that he was not a willing participant in the events, the evidence showed
> that [Swinson] did orally penetrate the complainant with the knowledge of
> defendant's intent to sexually violate the complainant against her will.  As such,
> [Swinson] meets the legal requirements of an aider and abettor.  Because [Swinson]
> performed an act that served to assist defendant in the effectuation of a sexual
> assault, sufficient evidence was adduced at trial to support defendant's conviction
> of [first-degree criminal sexual conduct].

*Sikorski*, 2016 WL 6496092, at *5-6 (citations omitted).

The state court faithfully applied federal law.  It is well established that "the Due Process
Clause protects the accused against conviction except upon proof beyond a reasonable doubt of
every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S.
358, 364 (1970).  Under the Due Process Clause, the critical inquiry on review of the sufficiency of
the evidence to support a criminal conviction is "whether the record evidence could reasonably
support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318
(1979).  A federal court reviewing a state court conviction under the habeas corpus statute that is
"faced with a record of historical facts that supports conflicting inferences must presume — even
if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts

in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. For habeas corpus, that rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

One way of proving first-degree criminal sexual conduct under Michigan law is by presenting evidence that (a) the defendant engaged in "sexual penetration with another person," (b) "[t]he actor is aided or abetted by 1 or more persons," and (c) "[t]he actor use[d] force or coercion to accomplish the sexual penetration." Mich. Comp. Laws § 750.520b(1)(d)(ii). "The phrase 'aids or abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v. Moore*, 470 Mich. 56, 63, 679 N.W.2d 41, 46 (2004) (citation omitted). "Force or coercion" is established when

> (i) When the actor overcomes the victim through the actual application of physical force or physical violence;
>
> (ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats; [or]

-8-

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat[.]

Mich. Comp. Laws § 750.520b(1)(f).

Sikorski's argument is based on his misapprehension of the requirements for aiding and abetting under state law. He thinks that he could not be guilty under such a theory unless the principal is also guilty of the offense. But the Michigan Court of Appeals rejected this argument, as a matter of state law, when it found that Swinson's actions "[met] the legal requirements of an aider and abettor." *Sikorski*, 2016 WL 6496092, at *6. The state court held that Sikorski and Swinson aided each other in the commission of the second offense: Sikorski engaged in the force and coercion, and Swinson engaged in the sexual penetration. The state court's interpretation and application of state law is binding on this Court on federal habeas review. The pronouncement of an element of a crime, and the facts necessary to prove it, are questions of state law, which federal courts must leave alone. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002); *Jenkins v. Dailey*, 348 F. App'x. 114, 119 (6th Cir. 2009). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

Moreover, although Swinson testified that he did not personally possess the mental state to commit the crime and only did so because he felt threatened by Sikorski, it is conceivable that the jury rejected that part of his testimony. The jury may very well have believed that Swinson committed first-degree criminal sexual conduct as a principal, and that Sikorski aided and abetted him by directing him to do so. This Court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal

-9-

habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The jury may have found Swinson's testimony that he was forced to sexually penetrate the victim not to be credible. And in reviewing the legal sufficiency of the evidence, this Court will not second guess the jury's credibility determination of Swinson's testimony that he only engaged in sexual penetration because he was forced to do so by Sikorski.

The state court of appeals reasonably applied controlling federal law when it rejected this argument on direct appeal.

## B.

Sikorski argues that his rights under the Double Jeopardy Clause were violated when he was convicted of accomplishing first-degree criminal sexual conduct through force and coercion *and* during the commission of another felony. There might have been something to that argument if it were based on evidence of a single act of penetration. The Michigan Supreme Court has held that "a single sexual penetration, accompanied by more than one of the statute's enumerated special circumstances," can result in but one conviction. *People v. Johnson*, 406 Mich. 320, 322, 279 N.W.2d 534, 535 (1979). But in this case, the Michigan Court of Appeals on remand from the Michigan Supreme Court found that Sikorski's rights were not violated because his two convictions related to the two separate sexual penetrations:

> Based on the testimony adduced at trial, defendant, while physically assaulting the complainant, engaged in a single act of penetration involving the placement of his penis in her vagina. Defendant was also present when, through the use of force and threats, [Swinson] engaged in an additional and concurrent act of penetration by inserting his penis into the complainant's mouth. Convictions arising from these independent acts are not for the same offense but are for the separate acts of penetration in which he was involved. Defendant's use of force or coercion in aiding and facilitating the penetration of the complainant by [Swinson] was sufficient to convict him as an aider and abettor, in addition to the conviction for defendant's personal act of vaginal penetration.

*Sikorski*, 2016 WL 6496092, at *3-4 (cleaned up).

-10-

That decision reasonably applied governing federal law.  The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend. V.  The Clause is "applicable to the States through the Fourteenth Amendment," *Lockhart v. Nelson,* 488 U.S. 33, 38 (1988), "[a]nd it protects against multiple punishments for the same offense," *North Carolina v. Pearce,* 395 U.S. 711, 717, (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989).

What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment.  "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

Although the Double Jeopardy Clause "protects against multiple punishments for the same offense," *Pearce*, 395 U.S. at 717, it does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

Here, the state court found that two offenses occurred and that there was no double jeopardy violation.  The first count related to Sikorski's penetration of the victim's vagina with his penis, and the second count related to Sikorski directing Swinson to penetrate the victim's mouth with his penis.  The two offenses occurred more or less simultaneously, but under state law, each sexual penetration counts as a separate offense.  *See*, *e.g.*, *People v. Garland*, 286 Mich. App. 1, 6-7, 777 N.W.2d 732, 735 (2009).  A finding that there were two distinct acts "necessarily precludes a

violation of the double jeopardy clause." *Costo v. United States*, 904 F.2d 344, 346 (6th Cir. 1990); *see also Smith v. Mills*, 98 Fed. Appx. 433, 436 (6th Cir. 2004) (two attempted rape convictions did not constitute double jeopardy where the evidence indicated that the defendant made two separate attempts to penetrate the victim). This claim is without merit.

C.

Sikorski next asserts that his trial counsel was ineffective because he failed to call defense witnesses who, Sikorski now contends, would have testified that the victim denied being sexually assaulted before she spoke to the police. Sikorski posits that the victim is "somewhat physically and mentally handicapped," and she could therefore have been manipulated by the police into making false claims of sexual assault. ECF No. 1, PageID.11.

After reciting the established constitutional standard governing claims of ineffective assistance of counsel, the Michigan Court of Appeals rejected the claim because Sikorski did not "provide factual support" for it.

> Defendant did not, for example, provide the trial court with affidavits from the purported witnesses supporting his assertion that the complainant told each of them that defendant did not sexually assault her. Without such evidence, defendant cannot establish that the purported testimony would have discredited the complainant's testimony such that he was deprived of a substantial defense. Thus, defendant did not meet his burden of establishing the factual predicate of his claim and did not establish both deficient performance and prejudice. Moreover, evidence was presented at trial that at least one of the witnesses defendant asserts should have been called by defense counsel intimidated [Swinson] to change his statement to the police.

*Sikorski*, 2015 WL 3540563, at *5–6.

This holding likewise faithfully tracked federal law. A petitioner claiming a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's

-12-

representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted). And where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Sikorski comes up short on both the performance and prejudice elements of this claim because he failed to provide any affidavits or other proffer of evidence to the state courts from any of the four named proposed defense witnesses. He hasn't given this Court any of that information, either. Instead of furnishing affidavits from any of the uncalled witnesses describing their proposed testimony and expressing their willingness to have testified on his behalf, this Court is left only with Sikorski's naked conclusions that the witnesses might have helped his case. But

-13-

conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Without such proffered evidence, Sikorski cannot establish that his lawyer performed deficiently or that he was prejudiced by the failure to call these defense witnesses to testify at trial. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). This claim is without merit.

### D.

Sikorski's remaining three claims concern his sentence. In claim four, he asserts that when he was originally sentenced, the trial court used facts not proven beyond a reasonable doubt when scoring the then-mandatory sentencing guidelines, which violated his Sixth Amendment jury trial rights. He asserts in his fifth claim that the state court remedy for the Sixth Amendment error — requiring the trial court to determine whether it would have imposed the same sentence if the guidelines were advisory and not mandatory — violated the *Ex Post Facto* Clause. And in his sixth claim, he argues that his appellate counsel was ineffective by failing to raise the *ex post facto* challenge in the state appellate courts.

Sikorski's fourth claim was rendered moot when the trial court reconsidered his sentence on remand under the sentencing guidelines that by then had become advisory. On June 17, 2013, a few months before Sikorski was first sentenced, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Later, while Sikorski's direct appeal was pending, the Michigan Supreme Court, relying on *Alleyne*, held that Michigan's mandatory sentencing guidelines scheme violated the Sixth Amendment right to a jury trial. *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015). The Court severed the mandatory component of the guidelines and made the guidelines

advisory. *Id*. at 391-92, 870 N.W.2d at 520-21. The remedy ordered for the *Lockridge* defendants was a remand to the sentencing court to determine if it would have imposed the same sentence had the guidelines been advisory, based on the procedure adopted by the Second Circuit in *United States v. Crosby*, 397 F.3d 103, 117-118 (2d Cir. 2005). *Id.* 498 Mich. at 395-97, 870 N.W.2d at 522-24. That procedure was followed in this case. The case was remanded to the sentencing court, which determined that it would have imposed the same sentence had the guidelines been advisory. ECF No. 7-18, PageID.1026-27. Sikorski's Sixth Amendment claim is therefore moot, because he already has received all the relief to which he was entitled. *See Hill v. Sheets*, 409 F. App'x 821, 824-25 (6th Cir. 2010); *Reign v. Gidley*, 929 F.3d 777 (6th Cir. 2019).

Unsatisfied with that remedy, Sikorski asserts that the *Crosby* remand procedure amounted to a new sentencing regime that did not exist at the time of the offense, and its application to his case therefore violated the *Ex Post Facto* Clause of the Sixth Amendment. This argument is equally novel and meritless. The Supreme Court has held that an *ex post facto* violation occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Peugh v. United States*, 569 U.S. 530, 533 (2012). But the *Crosby* remand procedure adopted by the *Lockridge* court did not impose a higher applicable guidelines range than the mandatory regime that existed at the time of Sikorski's offense. *Lockridge* removed the requirement that "substantial and compelling reasons" must exist to justify a departure either above or below from the recommended guidelines range. But the trial court here did not depart from the guideline range. Sikorski was not subjected to a higher guidelines range than existed at the time of his offense, and therefore no ex post facto violation occurred.

Finally, Sikorski's appellate counsel was not ineffective by failing to raise a meritless *ex post facto* claim. *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008).

None of Sikorski's arguments relating to the imposition of his sentence merits habeas corpus relief.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 7, 2023

-16-